[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AFTER HEARING IN DAMAGES
Plaintiff entered his "Pro Se" appearance to this "Summons-Civil" authorized by an Assistant Clerk of this court on March 17, 2000. Abode service on the named defendant is recorded as completed on March 22, 2000.
Plaintiff filed his "Motion for Default for Failure to Appear" on June 8, 2000. An order of Default entered on June 12, 2000, and "Non-appearing parties notified on June 13, 2000." On June 15, 2000, Errol Palmar entered an appearance for the defendant. This form lacked certification. On June 21, 2000 plaintiff filed his "Motion for Default for Failure to Plead" which was granted on June 26, 2000, and defendant was notified on June 27, 2000.
Plaintiff claimed a hearing in damages for July 25, 2000. Both parties attended this hearing.
Preliminary discussions by defendant indicates he "got the letter about to appear to court, I didn't get the letter, and I came down and went downstairs to the clerk's and they — I told them I didn't get the letter to appear and then they told me to fill out some papers — I did — that is why I am hear today." "I didn't bother with that letter."
Plaintiff forwarded a certified letter addressed to defendant indicating the Post Office left several notices at defendant's resident that were ignored. Defendant also ignored other contact from plaintiff claiming he wanted his day in court. His wife picked up one letter from plaintiff. He didn't want to be bothered. Plaintiff pleaded with defendant and "beg him" to resolve this conflict. Defendant physically pushed plaintiff off his property and "tell me . . . he is going to let his dogs loose on me."
Materials from plaintiff and defendant clearly indicated many conflicts in the history of this case and the court asked the parties if they wanted a hearing in damages. Both agreed.
Both were duly sworn and testified.
Plaintiff and defendant entered into a contract around August 18, 1999, for defendant to put a roof on plaintiff's house for $5,000.00 in three installments, $2,000.00 first down, $1,500.00 and $1,500.00 at the finish. Plaintiff believed defendant was a friend and trusted him to be honest. Defendant started the roof appropriately the 19th of August when he opened up one side of the roof, the plywood (sic) one side, and asked for $1,500.00 a total of $3,500.00 paid. He opened the whole entire section of the roof and left it opened, all of it. He never came back to CT Page 10245 the job. On September 15th Hurricane Floyd blew the "blue cover" off the roof and left the house open, fully open. Plaintiff claims he told defendant by message and again next day that the top blew off the roof. Defendant did no respond until the third call by phone responding only that it was a "hole house." "It's not a big deal, its just an abandoned house." "He dug the roof off, he threw the roof on the sidewalk in the neighbor's house and leave it on the ground."
The city ordered plaintiff to clean the debris or face a stiff fine. Defendant has opened the roof, left it open and removed materials from plaintiff's property. Plaintiff called the police who responded that the facts presented a civil problem.
Plaintiff complained to consumer protection who referred him to civil court.
The file contains an estimate of $53,895.00 to replace the roof and replace water damage. Another estimate is for $22,000.00.
Defendant's evidence consisted in part with before and after pictures of the house. Open windows, window boarded up and pictures of the roof. He admitted to a contract for him to repair the roof. His truck broke down. He refused to take his equipment to the property because there is a lot of drug activity in the house and around there and he told him he was "not going to loose my stuff." He admits rain damage was incurred but denied "that much." He denied responsibility for so much garbage inside the house. Defendant claims plaintiff fired him and as a result he removed his materials. Defendant denied friendship with plaintiff and trusting him.
Defendant claims plaintiff avoided meeting the city house inspector for an on sight inspection because "there is a lot of violations and he would have to bring it up to code."
Defendant's evidence indicates the condition of the roof on July 23, 2000, by showing two views, identified by copy in photos of New Haven Sunday Register of that date. The actual date of the photos could be after that date, but the photos portray the condition of the roof in two views.
Defendant's additional photos, in evidence, portray inside and outside, areas of the house and property.
Material evidence of the plaintiff indicate defendant ignored court notice of default and certified mail from plaintiff. Plaintiff and defendant agreed to present their testimony and material evidence to the CT Page 10246 court on a De Novo basis.
The court allowed each party to present their claim in their own words, they agreed.
Plaintiff and defendant agreed to a contract in the amount of $5,000.00 and part payment by plaintiff of $3,500.00. Defendant partially performed his contractual obligation. There was a significant rain fall with water damage via the roof opening created by the defendant. The defendant's vehicle blew up and his performance and contractual obligation ceased.
Testimony of each party was highly emotional and self serving raising serious questions of credibility.
The photographs in evidence indicate conditions portrayed. When, why, who caused, etc., are unanswered.
The court cannot speculate, gross or surmise.
The court finds the defendant breached his contract and is responsible for damages including a refund of $3,500.00.
Damages computed by plaintiff — not disputed by defendant:
 Defendant to be refunded: $ 3,500.00 Renovation cost $25,275.00 Clean-up $ 600.00 __________ Total $29,375.00
Judgment for plaintiff for $29,375.00 plus costs.
By the Court,
Reynolds, J